

1  STEVEN W. MYHRE
   Attorney for the United States
2  Acting Under Authority Conferred by
   Title 28, United States Code, Section 515
3  JAMES E. KELLER
4  Assistant United States Attorney
   333 Las Vegas Boulevard South, Suite 5000
5  Las Vegas, Nevada 89101
6  (702) 388-6336
   Attorneys for the United States
7

8              UNITED STATES DISTRICT COURT

9                   DISTRICT OF NEVADA

10

11  UNITED STATES OF AMERICA,           Case No. 2:14-CR-0022-JAD-CWH

12                    Plaintiff,

13  vs.                                 **PLEA AGREEMENT UNDER**
                                        **FED. R. CRIM. P. 11 (c)(1)(A) and**
14                                      **(B)**

15  R. CHRISTOPHER READE,

16                    Defendant.

17      Plaintiff United States of America, by and through the undersigned, defendant R.

18  Christopher Reade, and the defendant's undersigned attorneys, respectfully submit this

19  Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B).

20  I.    SCOPE OF AGREEMENT

21      The parties to this Plea Agreement are the United States of America (also referred

22  to herein as "the government") and R. CHRISTOPHER READE, the defendant.  This

23  Plea Agreement binds the defendant and the United States Attorney's Office for the

24  District of Nevada.  It does not bind any other prosecuting, administrative, or regulatory

25  authority, the United States Probation Office, or the Court.

26      The Plea Agreement sets forth the parties' agreement regarding the criminal

27  charge referenced in the Plea Agreement and applicable sentences, fines, restitution, and

28

                                    1

forfeiture.  It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the defendant.

## II.   DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A.   <u>Guilty Plea</u>.  The defendant knowingly and voluntarily agrees to plead guilty to the following charge set forth in the Information, filed by the United States Attorney's Office, contemporaneous with the filing of the defendant's voluntary and knowing waiver of his right to a federal grand jury's consideration of the charge set forth in the Information, that is: <u>Accessory After the Fact to Laundering of Monetary Instruments</u>; in violation of 18 U.S.C. § 3.

B.   <u>Waiver of Trial Rights</u>.  The defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain rights guaranteed to all defendants by the laws and the Constitution of the United States.  Specifically, the defendant is giving up:

1.   The right to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;

2.   The right to confront the witnesses against the defendant at such a trial, and to cross-examine them;

3.   The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

4.   The right to testify in his own defense at such a trial if he so chooses;

5.   The right to compel witnesses to appear at such a trial and testify in the defendant's behalf; and

6.   The right to have the assistance of an attorney at all stages of such proceedings.

C.   <u>Withdrawal of Guilty Plea</u>.  The defendant will not seek to withdraw his guilty plea after he has entered it in court.

1    D.   Additional Charges.  The United States agrees not to bring any additional

2 charges against the defendant arising out of the investigation in the District of Nevada

3 which culminated in this Plea Agreement and based on conduct known to the United

4 States.

5    E.   Tolling of Applicable Statute of Limitations.  The United States and the

6 defendant have agreed, through the voluntary and knowing execution of a Tolling

7 Agreement dated July 3, 2012 ("Tolling Agreement"), and the subsequent execution

8 Addendums One through Eight thereto, to the tolling of the statute of limitations

9 applicable to the charges investigated and considered by the United States as to the

10 defendant in this case.  The Tolling Agreement, with Addendums One through Eight

11 thereto, remains in full force and effect for this case and for this plea agreement.

12 **III.   ELEMENTS OF THE OFFENSE**

13    Count:  The elements of Accessory After the Fact to the Laundering of Monetary

14 Instruments, in violation of 18 U.S.C. § 3 are:

15    (1)   From on or about February 15, 2007, continuing to on or about to August

16 21, 2007, the crime of laundering of monetary instruments in violation of Title 18,

17 United States Code, Section 1956(a)(1)(B)(i) had been committed by Rick Young and

18 others;

19    (2)   The defendant knew that this crime had been committed, and that Rick

20 Young and others had committed it; and

21    (3)   The defendant thereafter intentionally received, relieved, comforted, or

22 assisted Rick Young in order to hinder and prevent his punishment for the crime

23 laundering of monetary instruments.

24    The elements of the underlying offense, Laundering of Monetary Instruments, in

25 violation of 18 U.S.C. § 1956(a)(1)(B)(i), for the principal, Rick Young, are as follows:

26    (1)   Young conducted or intended to conduct a financial transaction involving

27 property that represented the proceeds of a specified unlawful activity;

28    (2)   Young knew that the property represented the proceeds of the specified

unlawful activity;

3

(3)     Young knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity; and

(4)     Young did something that was a substantial step toward committing the crime.

## IV.    FACTS SUPPORTING GUILTY PLEA

A.     The defendant will plead guilty because he is, in fact and under the law, guilty of the crime charged.

B.     The defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt.  The defendant further acknowledges that his admissions and declarations of facts set forth below satisfy every element of the charged offense.

C.     The defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offense.

D.     The defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

Unless stated otherwise, at all times relevant to the Information:

Background

1.     Defendant R. Christopher Reade was a duly licensed attorney in the State of Nevada, practicing business law in Las Vegas, Nevada.

2.     Rick Young owned and operated a Nevada corporation known as Global One Group, LLC (hereinafter "Global One"), a web-based company which purported to train others how to trade in the FOREX.

3.     FOREX was a term colloquially associated with the market generated by trades in foreign currency futures contracts.  Currency futures contracts were generally traded through Futures Commission Merchants ("FCMs"), also referred to as FOREX brokers or FOREX dealers.

/ / /

Underlying Money Laundering Conduct by Rick Young

4.    As founder and CEO of Global One, Young advertised to the general public that he was an experienced and highly successful trader in the FOREX market, who could teach others his winning trading strategies and techniques. For a fee, Young offered "memberships" in Global One where joining members gained access to Young's web-based live training seminars. During these seminars, Young claimed, among other things, that he had developed an automated trading program that traded according to his strategies simply by "flipping a switch."

5.    As Global One's membership grew, Young constructed a scheme and artifice to defraud its members of their money and property. As part of the scheme and artifice, Young falsely and fraudulently represented that in return for "loans" made to Global One, participant members would be paid high yield returns generated from profits derived from trades made through his automated trading program. As a further part of the scheme, Young fraudulently concealed from Global One members that, in truth and in fact, the automated trading program did not exist as represented, that payments of member loans were made from the proceeds of later-in-time loans from other members and not from profits generated by Global One, and that the proceeds from member loans were diverted to Young's personal use and interests and away from Global One's business purposes or interests in the District of Nevada and elsewhere.

6.    From 2006 to 2008, Young derived approximately $16 million in proceeds from his fraudulent scheme.

Defendant's Relationship with Global One and Rick Young

7.    Beginning in February 2007, defendant Reade represented Global One and Young in connection with transactions and litigation arising from Global One's business activities.

8.    In March 2007, Young intended to purchase a FOREX broker, named Trend Commodities ("Trend"), using proceeds derived from the "loans" from Global One members. The purchase of Trend would allow Young to become a broker/dealer in currency futures contracts.

9.      To disguise the source, ownership, and control of Global One's "loan" proceeds to be used for the purchase of Trend, Young authorized defendant Reade to create a holding corporation called Way FX Corp., listing Reade as its Director, Secretary and President. Thereafter, in or about April 2007, Young directed the transfer of approximately $2,250,000 from Global One accounts to an account held by Way FX and controlled by Reade for the purchase and capitalization of Trend.   These transactions constituted the unlawful laundering of monetary instruments by Young, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

10.      In April 2007, Reade, nominally on behalf of Way FX, signed an agreement to purchase Trend.

Monitoring of Purchases of FOREX Brokers within the United States

11.      The National Futures Association ("NFA") is an independent regulatory agency designated by federal regulations to regulate the practice of its FOREX brokers/dealers in the United States and to enforce rules and regulations designed to protect the trading public from fraud and deceitful and deceptive trading practices in the FOREX.

12.      The NFA is required to review and approve the purchase of any FOREX broker in the United States. As part of that process, prospective purchasers must undergo a background check and demonstrate that any funds used to purchase and capitalize the broker are neither encumbered nor derived from fraud.

13.      From on or about May 2007 to August 2007, and in the course of its review and audit of the Trend purchase, NFA regulators conducted interviews of, and meetings with, defendant Reade in the District of Nevada and elsewhere where he was asked if Global One was involved in the purchase of Trend and if the funds for the capitalization of Trend were in any way encumbered.   Reade responded falsely in the District of Nevada and elsewhere that: (a) he was unaware who owned Global One; (b) Global One's assets were not used to purchase Trend; (c) he was unaware how Global One raised money; and (d) the funds in the Way FX accounts came from his personal contributions and assets.

14.     Defendant Reade knew that his representations were false, and that Young had committed the offense of money laundering by directing the transfer of money to Way FX accounts for the Trend purchase.  Defendant Reade further knew that, by his misrepresentations to the NFA, he assisted Young in order to hinder the NFA's investigation of Young in connection with the Trend transaction and prevent the punishment of Young for the crime of money laundering.

15.     On August 21, 2007, in the District of Nevada, by check issued to Reade & Associates, defendant Reade received $75,000 from Global One's merchant account for his services, including expenses, relating to Way FX and the purchase of Trend.

All in violation of Title 18, United States Code, Section 3.

## V.   COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose.  If the defendant does not plead guilty or withdraws his guilty plea, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument or representation offered by or on the defendant's behalf.  The defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

## VI.   APPLICATION OF SENTENCING GUIDELINES PROVISIONS

A.   <u>Discretionary Nature of Sentencing Guidelines</u>.   The defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") in determining the defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B.   <u>Offense Level Calculations</u>.  The parties stipulate to the following calculation of the defendant's offense level under the Sentencing Guidelines and acknowledge that these stipulations do not bind the Court:

Accessory After the Fact to Money Laundering, in violation of 18 U.S.C. § 3:

| | | |
|---|---|---|
| Base offense level for Laundering of Monetary Instruments USSG §§ 2S1.1(a)(2) | | 8 |
| Specific Offense Characteristics – USSG § 2B1.1(b)(1)(I) More than $1 million but less than $2.5 million | + | 16 |
| Reductions  Accessory After the Fact  USSG § 2X3.1 | - | 6 |
| Acceptance of Responsibility  USSG § 3E1.1 USSG § 3E1.1 | - | 3 |
| Adjusted Offense Level | | 15 |

The defendant acknowledges that the statutory maximum sentence limits the Court's discretion in determining the defendant's sentence notwithstanding any applicable Sentencing Guidelines provisions.

C.   <u>Acceptance of Responsibility</u>. Under USSG § 3E1.1(a), the government will recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i), if applicable, violates the conditions of pretrial release.

Under USSG § 3E1.1(b), the government will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the defendant communicated his decision to plead guilty in a timely manner that enabled the government to avoid preparing for trial and to efficiently allocate its resources.

D.    Relevant Conduct

The parties understand that the Court may consider all other relevant conduct, whether charged or uncharged, in determining the defendant's applicable Sentencing Guidelines range pursuant to USSG § 1B1.3, and whether to depart from that range.

E.    Enhancements Adjustments Variances

Except as specifically set forth in this Plea Agreement, the parties agree not to seek any further enhancements or upward adjustments, and not to seek any further reductions or downward adjustments based on the offense conduct to which he is pleading guilty and all conduct relevant to the offense conduct.

F.    Criminal History Category.  The defendant acknowledges that the Court may base its sentence in part on the defendant's criminal record or criminal history.  The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines. At the time of this Plea Agreement, the parties are unaware of any criminal history for the defendant.

G.    Additional Sentencing Information.  The stipulated Sentencing Guidelines calculations are based on information now known to the parties.  The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances.  Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines

9

1  range and makes other sentencing determinations, and the Court's reliance on such
2  information shall not be grounds for the defendant to withdraw his guilty plea.

3  ## VII.   APPLICATION OF SENTENCING STATUTES

4     A.   <u>Maximum Penalty</u>.   The maximum penalty for Accessory After the Fact
5  under 18 U.S.C. § 3 is a prison sentence of not more than one-half the maximum term of
6  imprisonment and a fine of not more than one-half the maximum fine prescribed for the
7  punishment of the principal, or both.   The maximum term of imprisonment for the
8  principal for the offense for money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i)
9  is 20 years, and the maximum fine for the principal for the offense of money laundering
10 in violation of 18 U.S.C. § 1956(a)(1)(B)(i) is $500,000 or twice the value of the property
11 involved in the transaction, whichever is greater.   *See* 18 U.S.C. § 1956(a)(1)(B)(i).
12 Therefore, the maximum penalty for Accessory After the Fact under 18 U.S.C. § 3 in this
13 case is a prison sentence of 10 years and a fine of $250,000 or not more than the value of
14 the property involved in the transaction, whichever is greater.

15    B.   <u>Factors Under 18 U.S.C. § 3553</u>.   The Court must consider the factors set
16 forth in 18 U.S.C. § 3553(a) in determining the defendant's sentence.   However, the
17 statutory maximum sentence limits the Court's discretion in determining the
18 defendant's sentence.

19    C.   <u>Additional Mandatory Sentencing Provisions</u>.   There is no mandatory
20 minimum sentence that must be imposed by statute in this case.

21    D.   <u>Parole Abolished</u>.   The defendant acknowledges that his prison sentence
22 cannot be shortened by early release on parole because parole has been abolished.

23    E.   <u>Supervised Release</u>.   In addition to imprisonment and a fine, the defendant
24 will be subject to a term of supervised release of up to 3 years.   18 U.S.C. § 3583(b).
25 Supervised release is a period of time after release from prison during which the
26 defendant will be subject to various restrictions and requirements.   If the defendant
27 violates any condition of supervised release, the Court may order the defendant's return
28 to prison for all or part of the term of supervised release, which could result in the

1  defendant serving a total term of imprisonment greater than the statutory maximum
2  prison sentence of 10 years.

3      F.      Special Assessment.  The defendant will pay a $100.00 special assessment
4  at the time of sentencing.

5  **VIII.  POSITIONS REGARDING SENTENCE**

6      The defendant reserves the right to argue pursuant to the sentencing factors set
7  forth under 18 U.S.C. § 3553(a) for a sentence, such as a sentence of probation, that is
8  below the Sentencing Guidelines range as calculated in this Plea Agreement.  In any
9  event, the defendant will <u>not</u> seek a downward adjustment pursuant to any other
10 provision of the Sentencing Guidelines other than those reserved in this Plea Agreement.

11     The United States will recommend that the Court sentence the defendant to the
12 low-end of the Sentencing Guidelines range as calculated by this Plea Agreement, unless
13 (a) the defendant commits any act that could result in a loss of the downward
14 adjustment for Acceptance of Responsibility, or (b) the defendant argues for a sentence
15 that is below the Sentencing Guidelines range as calculated by this Plea Agreement.

16     If the defendant argues for a sentence pursuant to the factors set forth in 18
17 U.S.C. § 3553(a) that falls below the Sentencing Guidelines range as calculated by this
18 Plea Agreement, then the government is bound only to recommend a sentence within the
19 Sentencing Guidelines range as calculated in this Plea Agreement.

20     The defendant acknowledges that the Court does not have to follow the
21 government's or the defendant's recommendation as to his sentence.

22     Notwithstanding its agreement to recommend a low-end sentence, the United
23 States reserves its right to defend any lawfully imposed sentence on appeal or in any
24 post-conviction litigation.

25 **IX.  RESTITUTION**

26     The parties take the position that restitution is not applicable and the government
27 agrees not to seek an Order of Restitution for the offense conduct.  The defendant
28 understands, however, that the decision whether restitution is appropriate under 18
U.S.C. § 3663 ultimately rests with the Court.

**X.    ABANDONMENT**

The defendant knowingly and voluntarily:

A.    Agrees to the abandonment to the United States and the Internal Revenue Service (hereinafter, "the United States and its agencies") of $75,000 (hereinafter, the "property"), which is the amount of United States currency the defendant withdrew from Global One's Merchant Account by check made payable to Reade & Associates on August 21, 2007, for the defendant's assistance relating to Way FX and the purchase of Trend Commodities;

B.    Through this abandonment, acknowledges that he is disclaiming, relinquishing, transferring, and terminating in favor of the United States and its agencies any and all interest he has or may have in the property;

C.    Through this abandonment, further acknowledges that no other person or entity known to him has any ownership or possessory interest in the property, other than the law firm of Reade & Associates, for which defendant has the authority to disclaim and hereby knowingly and voluntarily so disclaims said interest on behalf of Reade & Associates;

D.    Through this abandonment, waives any right he may have to receive notice of any administrative abandonment proceedings, any civil administrative forfeiture proceedings, and any civil judicial forfeiture proceedings of the property (hereinafter, "proceedings") and further consents to the disposition of the property, or any portion thereof, as the United States and its agencies deems appropriate;

E.    Through this abandonment, waives service of process of any and all documents filed in any proceedings concerning the property arising from the facts and circumstances of this case;

F.    Through this abandonment, waives any further notice to him, his agents, or his attorney(s) regarding the abandonment and disposition of the property;

G.    Through this abandonment, agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property;

H.      Through this abandonment, waives the statute of limitations, the Civil Asset Forfeiture Reform Act ("CAFRA") requirements, Fed. R. Crim. P. 7 and 32.2, the constitutional requirements, and the constitutional due process requirements of any proceedings concerning the property;

I.      Through this abandonment, waives all constitutional, legal, and equitable defenses to the forfeiture or abandonment of the property in any proceedings, including but not limited to constitutional or statutory double jeopardy defenses;

J.      Through this abandonment, agrees to make no claim or other assertion of any entitlement to the property or any objection to the disposition of the property in any administrative, judicial, or quasi-judicial forum;

K.      Through this abandonment, knowingly and voluntarily releases and forever discharges the United States and its agencies and employee from any and all claims, rights, or causes of action of any kind that he know has or may hereafter have on account of, or in any way growing out of, the seizure, detention, custody, or abandonment of the property;

L.      Through this abandonment, agrees that forfeiture is immediately due and payable and subject to immediate collection by the United States and its agencies;

M.      Through this abandonment, agrees and understands the abandonment, the civil administrative forfeiture, or the civil judicial forfeiture of the property shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to the abandonment or the forfeiture;

N.      Acknowledges that the amount of the forfeiture may differ from, and may be significantly greater than, the amount of restitution; and

O.      Acknowledges that he has had an opportunity to obtain the advice of counsel regarding the terms of this abandonment and has affixed his signature to this plea agreement voluntarily.

/ / /

XI.   **FINANCIAL INFORMATION AND DISPOSITION OF ASSETS**

Before or after sentencing, upon request by the Court, the United States, or the Probation Office, the defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets and his ability to pay.

XII.   **THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS**

A.   <u>Plea Agreement and Decision to Plead Guilty</u>.  The defendant acknowledges that:

(1)   He has read this Plea Agreement and understands its terms and conditions;

(2)   He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

(3)   He has discussed the terms of this Plea Agreement with his attorney;

(4)   The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

(5)   He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charge brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial.  The defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

B.   <u>Waiver of Appeal and Post-Conviction Proceedings</u>.   The defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as calculated by this Plea Agreement; (b) the right to appeal the manner in which the Court determined that sentence on the

grounds set forth in 18 U.S.C. § 3742(a)(2)-(4); and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The defendant reserves only the right to appeal any portion of the sentence that is greater than the Sentencing Guidelines range as calculated by this Plea Agreement, or an unlawful sentence imposed in violation of the law as provided in 18 U.S.C. § 3742(a)(1).

The defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case 15 days after the entry of defendant's judgment is entered in this case.

## XIII.  ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions.  It constitutes the entire agreement negotiated and agreed to by the parties.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1  No promises, agreements or conditions other than those set forth in this agreement have

2  been made or implied by the defendant, the defendant's attorney, or the United States,

3  and no additional promises, agreements or conditions shall have any force or effect

4  unless set forth in writing and signed by all parties or confirmed on the record before the

5  Court.

6  STEVEN W. MYHRE
   Attorney for the United States
7  Acting Under Authority Conferred by
   Title 28, United States Code, Section 515
8

9  DATE __1/16/14__

10  JAMES KELLER
    Assistant United States Attorney
11

12  DATE __1/15/14__

    RICHARD WRIGHT, Esq.
13  MARGARET STANISH, Esq.
    WRIGHT, STANISH & WINCKLER
14  Counsel for the Defendant

15  DATE __1/15/14__

16  R. CHRISTOPHER READE
    Defendant

17

18

19

20

21

22

23

24

25

26

27

28