Partial Transcript                                             1
—— 2:14-cr-22-KJD-CWH - July 15, 2014 ——

```
                    UNITED STATES DISTRICT COURT

                      FOR THE DISTRICT OF NEVADA


UNITED STATES OF AMERICA,        )  Case No. 2:14-cr-22-KJD-CWH
                                 )
           Plaintiff,            )  Las Vegas, Nevada
                                 )  July 15, 2014
      vs.                        )  12:51 p.m.
                                 )
ROBERT CHRISTOPHER READE,        )  DEFENDANT'S ALLOCUTION AND
                                 )  JUDGE'S IMPOSITION OF SENTENCE
           Defendant.            )
                                 )    C E R T I F I E D   C O P Y
```

REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE KENT J. DAWSON,
UNITED STATES DISTRICT JUDGE


APPEARANCES:
For the Plaintiff:       STEVEN W. MYHRE, AUSA
                         United States Attorney's Office
                         333 Las Vegas Boulevard South, Suite 5000
                         Las Vegas, Nevada 89101
                         (702) 388-6336

                         JAMES E. KELLER, AUSA
                         United States Attorney's Office
                         100 West Liberty Street, Suite 600
                         Reno, Nevada 89501
                         (775) 784-5438
(continued next page)

COURT REPORTER:          Felicia Rene Zabin, FCRR, RPR, CCR 478
                         United States District Court
                         333 Las Vegas Boulevard South, Room 1334
                         Las Vegas, Nevada  89101

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

1  APPEARANCE CONTINUED:

2  For the Defendant:        RICHARD A. WRIGHT, ESQ.
                             MARGARET M. STANISH, ESQ.
3                            Wright, Judd & Winckler
                             300 South 4th Street, Suite 701
4                            Las Vegas, Nevada 89101
                             (702) 382-4004
5
   Also Present:             Leonel Sanchez, Probation Officer
6                            Robert Christopher Reade, Defendant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      LAS VEGAS, NEVADA; TUESDAY, JULY 15, 2014; 12:51 P.M.

2                              --oOo--

3                          P R O C E E D I N G S

4         THE COURT:  Mr. Reade, you have an opportunity to address
5  the Court before sentence is imposed.

6         THE DEFENDANT:  Yes, please, Your Honor.

7         COURT REPORTER:  Move the microphone closer.

8         THE COURT:  Yes.  Please remain seated and just move the
9  microphone over.

10        THE DEFENDANT:  (Complies.)

11        THE COURT:  Thank you.

12        THE DEFENDANT:  Your Honor, thank you for letting me
13 address the Court.

14        Throughout my life, my father has always told me never to
15 ruin an apology, contrition, or repentance with an explanation.
16 So please understand that what I tell you here today is not meant
17 as a justification or excuse for anything that we have talked
18 about.  It's meant to show the remorse, humiliation, and
19 devastation that I know that I have caused to my family, my
20 friends, my community, and the victims in this case.

21        There are two things that I've always shared with my
22 daughters every day.  One is I ask them before they leave to make
23 me proud that day and, number two, that to err is human but to not
24 fix it is inexcusable.  I have made no one proud in this case and
25 I make no one proud by sitting here.  I have fallen short of my

1  standards and the standards to which I understand this Court and
2  the community have the right to hold me.
3         I was given a great life and I built upon that great
4  life.  And now I've left it in rubble.  I've had a long time since
5  2007 to reflect on my actions and my decisions, to view the direct
6  and collateral victims of my actions.
7         First and foremost, I want to fully apologize and take
8  responsibility for my misrepresentations to the National Futures
9  Association.  As this Court may have gleaned from today's
10 proceedings, they were adversarial; they were not friendly.
11 That's not an excuse because I and I alone put myself in that
12 predicament of having my attorney-client privilege and duty of
13 confidentiality in direct conflict with my duty of candor to the
14 NFA.  Faced with that very difficult decision which I put myself
15 in, I made a choice and I made a wrong choice and I took actions
16 and they were wrongful actions.
17         Instead of defending the line of propriety for my client,
18 I stepped over that line.  I've always tried to fight for what I
19 think is right and in this case I chose wrong and I acted wrong.
20 I lawyered too hard and too fast in an effort to protect my
21 clients and get them what they -- I believed they wanted.  There
22 is no justification or excuse for my actions.  And I apologize to
23 the NFA today as I did in 2007.
24         Ultimately, though, the direct victims of my actions are
25 the members of Global One.  And I agree with Mr. Myhre, the effect

1  of my actions were not directed at those members, but that's who
2  it hurt.  It hurt their ability to have a fair chance at a
3  brokerage and to have transparency in the entity with which they
4  were affiliated.  While no customer monies were lost from Trend
5  and they all were returned, I recognize those members are still
6  victims and they are the people who I hurt.
7          I betrayed the very principles which I try to live and
8  practice by, do right in every occasion and do no harm to anyone.
9  I realize that I violated both of those.  My efforts were so
10 dedicated and driven to try and do what I believed was the best
11 for Global One and its members; to give them what they told me
12 they so wanted, which was a brokerage and a fair place to trade.
13 But, as we all know, the road to Hades is paved with those same
14 good intentions.  I was unfair and deceptive which didn't benefit
15 anyone and, in fact, hurt the very people I set out to help.
16         It's for that reason in 2007 that, addressing my conduct
17 to the NFA, I accepted a sanction from the NFA.  And I ruefully
18 now accept the same.  There's no amount of remorse and sorry and
19 apology that can adequately express the deep despair and grief and
20 repentance that I have for that.  Not just back then but today
21 because I know that the effects of those actions weren't limited
22 to 7 years ago but they've carried forward today.
23         There are two things in life, Your Honor, that I love and
24 I'll go to the ends of the earth for:  one is my family and the
25 second is the law.  To have to look today at the pain,

1  humiliation, and sorrow that I've brought to my family devastates
2  me.  To know that I have defaced, defiled, disgraced and destroyed
3  my family name that they built, not I, is heartbreaking.  To live
4  with my family and know the anguish and agony and sorrow and
5  despair that I caused them by my actions and my actions alone has
6  made it hard to continue.
7          I've always taken pride that my parents and children
8  could look at me with beaming pride for the good that I do and the
9  people that I've helped.  And now I have to know that I've caused
10 them furtive embarrassment as a father and a son.  There's no
11 amount of good deeds that I've done before today or will do after
12 today that will ever repair and replace the scar that I have left
13 on this life.  Nothing will ever restore the good name that I
14 worked so hard to build which then brings me to my second love
15 which is the law.  I don't mean the statutes.  I don't mean
16 sitting in this cathedral of the practice.  I mean the law,
17 helping people; working so hard to help the people that need a
18 voice to get access to justice.
19         I was proud to read in those letters somewhat that I've
20 come to be known for my zeal and my love and my passion for the
21 law.  Your Honor, it is the passion and not the power of law that
22 draws me to this life.  This is not my profession.  This is my
23 life.  This is what I live to do is to help people and to know
24 that I've done the exact opposite in hurting people is
25 devastating.  I've seen that unchecked zealousness and unmitigated

1  hubris leads to unquestionable harm.
2      I've resigned from everything because I'm too toxic to
3  serve.  Worst of all, I've damaged the very profession that I
4  love, the very practice that I love, the very purpose that I live
5  for; that I've tried to make so honorable, I've dishonored.
6      On Icarus wings, I have not only fallen, but I've harmed
7  those upon which I've landed.  And that's a difficult thing to
8  admit.  As I said, I know no amount of good deeds, good actions,
9  good will can ever repair and heal the scar that I have left.  And
10 yet, as I believe Mr. Wright has alluded to, that doesn't mean I'm
11 not gonna try and I've been trying and I'm gonna continue to try.
12 That from that rubble I've been left with bricks, bricks from
13 which I'm left to rebuild my life.  I ask this Court to look not
14 merely at my mistakes, my actions, my crimes but at the good that
15 I've tried to do.  I ask this Court for leniency and to allow me
16 to continue to atone.  And with that I thank you.
17      THE COURT:  Thank you.
18      Well, this is a very difficult case.  There are
19 considerations on both sides of the scale:  first, that it's a
20 first-time offense; zero Criminal History points for this
21 defendant.  A mountain of good work, community service.
22      Beyond that, that we see of most practitioners who
23 involve themselves in the pro bono projects, looking at the
24 recognitions that have been received reminded me of the amount of
25 effort that it took for my firm to be recognized even to a lesser

1  degree than Mr. Reade's firm.  However, on the other side is a
2  huge mistake that the Guidelines call for a sentence of 18 to 24
3  months.
4          I don't believe that I did calculate the Offense Level,
5  which I will do now:
6          The Base Offense Level is 18.
7          Three-level reduction for acceptance of responsibility is
8  applied resulting in a Total Offense Level of 15.
9          With a Total Offense Level of 15 and a Criminal History
10 Category of I, the Guideline range is 18 to 24 months with a
11 supervised release range of 1 to 3 years.
12         The Guideline fine range is 4,000 to 40,000 dollars.
13         The concerns the Court has with a noncustodial sentence
14 are the issue of whether it would recognize the seriousness of the
15 crime, promote respect for the law, provide just punishment.
16         I don't believe that we have to worry about reoffending
17 with Mr. Reade.  So protecting the public from further crime of
18 the defendant is a nonissue.
19         Providing the defendant with needed education and
20 training is a nonissue.
21         The issue of avoiding sentencing disparities and
22 affording deterrence to criminal conduct are somewhat important.
23 I'm not worried about detering future conduct on the part of
24 Mr. Reade, but I am concerned about deterrence generally.
25         In the course of defendant's dealings with his clients,

1  there should have been some red flags.  The fact that Mr. Young
2  was floating in money, making huge profits; that he was using a
3  system, Global Trac system, that was supposedly a
4  computer-generated proprietary system that would allow wins almost
5  all the time in foreign currency exchange against a history of
6  most people being losers in that activity; the representations of
7  results of trading should have thrown a red flag; the fact that
8  loans were being obtained from the investors and were really, in
9  fact, sales of securities; the disgruntled investors, he probably
10 didn't know too much about those.  At least the record doesn't
11 support a finding that you knew about them.  But the question is
12 should he have made further investigation and done more due
13 diligence on the individuals he's representing.
14         Sometimes we get a feeling from our clients that they are
15 crooks and the way they are throwing around money that it's too
16 good to be true, that they are engaged in lawful activity.  One of
17 the attractions of representing clients, at least the paying ones,
18 is that you do get paid.  And these -- I'm sure that he was
19 compensated for his representation of these defendants and I
20 suspect that it was beyond the $75,000 that was for the limited
21 work he did that is going to be divested.
22         My question still in my mind is why were his clients
23 insisting that he hide the source of the money.  He did take it
24 upon himself to hide the source of the money.  Why was that
25 needed?  If the source of the money was legitimate, why did he

1  need to deceive the investigative arm and cause the delay that was
2  attendant with the misrepresentations?
3         It seems to me that there is some evidence that there was
4  delay in the investors getting their money back and that money was
5  paid to Young in substantial amounts even after the defendant knew
6  that something was wrong.
7         So, with all of that, the Court is going to grant a
8  sentencing variance but not to the extent that has been requested
9  by defense.
10        As I've said already, the restitution will be paid.  The
11 client of Mr. Wright and Ms. Stanish has performed a monumental
12 amount of community service that is really unparalleled in my
13 experience and that is one of the primary reasons for a variance.
14 The next reason is the lack of likelihood of recidivism; the fact
15 that the defendant has lost a tremendous amount and I believe in
16 the future will be more careful with who he takes on as clients,
17 will do more due diligence and watch for warning signs that he was
18 not paying attention to as the facts of this case unfolded.
19        I believe that he has a strong community support that has
20 recognized the value of his service to the public.  I think that,
21 as is the experience with most of us when we get into serious
22 trouble, we go the other way and become very, very careful about
23 what we do and who we become involved with.
24        So the sentence is twelve months and one day.  The one
25 day is added to allow the defendant to receive good time.  I'm not

1  going to consider a split sentence in this case where the

2  defendant serves a custodial and alternative time.  It's twelve

3  months and one day.

4           The Court imposes a substantial fine at the high end of

5  the Guideline, which is $40,000.

6           The penalty assessment of $100 is imposed and due

7  immediately.

8           I do not know if I need to make an order on the $75,000

9  divestiture, but it's my understanding that will happen if it has

10 not happened already.

11          MR. MYHRE:  That's correct, Your Honor.  That's our

12 understanding also.  But I don't have an order prepared for the

13 Court --

14          THE COURT:  Well, that is --

15          MR. MYHRE:  -- at this time.

16          THE COURT:  -- the order.

17          MR. MYHRE:  Thank you, Your Honor.

18          THE COURT:  Supervised release is imposed for a term of

19 3 years.  While on supervised release, the defendant will comply

20 with the standard conditions as recommended by the Sentencing

21 Commission and the following mandatory conditions required by

22 statute:

23          You shall not commit another federal, state, or local

24 crime during the term of supervision.

25          You shall not possess illegal controlled substances.  You

1  shall refrain from any unlawful use of controlled substances and
2  submit to one drug test within 15 days of commencement of
3  supervision and two periodic drug tests thereafter not to exceed
4  104 tests annually.  Revocation is mandatory for refusal to
5  comply.
6         You will submit to DNA collection and analysis as
7  directed by the probation officer.
8         In addition, the following special conditions are
9  imposed:
10        You shall not possess, have under your control, or have
11 access to any firearm, explosive device, or dangerous weapon as
12 defined by federal, state, or local law.
13        You shall submit to the search of your person, property,
14 residence, place of business, and vehicle under your control to a
15 search conducted by the probation officer or an authorized person
16 under the immediate and personal supervision of the probation
17 officer at a reasonable time and a reasonable manner based on
18 reasonable suspicion of contraband or evidence of a violation of a
19 condition of supervision.  Failure to submit to the search may be
20 grounds for revocation.  And you will inform other residents the
21 premises may be subject to search pursuant to this condition.
22        You shall report in person to the Probation office in the
23 district to which you're released within 72 hours following your
24 discharge from custody.
25        Now, in your Plea Agreement, you did waive your right to

1  appeal your conviction and sentence.  Even though you have given
2  that waiver, there are certain appellate rights that cannot be
3  waived.  If you wish to exercise any right of appeal, you have 14
4  days from this date in which to file the Notice of Appeal.  If you
5  cannot afford an attorney to represent you for purposes of appeal,
6  one will be appointed for that purpose.  If you cannot afford a
7  transcript, one will be ordered for your use on appeal.
8           Is there a request for designation?
9           MS. STANISH:  Court's indulgence.
10      (Attorney-client discussion.)
11          MS. STANISH:  Your Honor, we would request Lompoc and
12 then, if that's not available, Taft as the alternative.
13          THE COURT:  Court recommends Lompoc and, as a second
14 recommendation Taft, California.  Those are the recommendations.
15          Are there any further matters to be addressed at this
16 time?  Government?
17      (Government counsel conferring.)
18          MR. MYHRE:  Your Honor, we have no objection to
19 continuing on terms and conditions.  We'd ask for a report date.
20          THE COURT:  Okay.  We will set that in just a moment.
21          Any further matters to be addressed by the defense?
22      (Defense counsel conferring.)
23          MS. STANISH:  Court's indulgence.
24          THE COURT:  Yes.
25      (Defense counsel conferring.)

1        MR. WRIGHT:  Nothing further, Your Honor.

2        THE COURT:  Thank you.

3        MR. WRIGHT:  Thank you.

4        THE COURT:  Report date, Ms. Clerk.

5        THE CLERK:  Yes, Your Honor.

6        Surrender date is Friday, October 17, 2014, by noon to

7   the designated facility.

8        THE COURT:  And the record will reflect the probation

9   officer is handing the defendant a copy of the Conditions of

10  Supervision of the District of Nevada, English language version.

11       I will be remiss if I do not take note of the numerous

12  individuals in the courtroom who have spent the better part of

13  four hours here in support of Mr. Reade.  And I thank you for your

14  attendance and interest in his case.

15       We are adjourned.

16     (Proceedings concluded at 1:14 p.m.)

17

18                            --oOo--

19              COURT REPORTER'S CERTIFICATE

20     I, FELICIA RENE ZABIN, Official Court Reporter, United
    States District Court, District of Nevada, Las Vegas, Nevada, do
21  hereby certify that pursuant to Section 753, Title 28, United
    States Code, the foregoing is a true, complete, and correct
22  transcript of the proceedings had in connection with the
    above-entitled matter.
23
    DATED: November 30, 2015
24
                              /s/ **Felicia Rene Zabin**
25                        FELICIA RENE ZABIN, RPR, CCR NO. 478